NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ROSANN DELSO,

        Plaintiff,   CIVIL NO. 04-3009 (AET)

  v.

TRUSTEES OF THE RETIREMENT
PLAN FOR THE HOURLY   **MEMORANDUM OPINION FOR**
EMPLOYEES OF MERCK & CO., INC.,   **REMAND [Docket Entry # 38]**

        Defendant.

**BONGIOVANNI, Magistrate Judge**

      This matter comes before the Court upon remand by United States District Judge Anne E. Thompson for further consideration and explanation of this Court's March 30, 2006 Order on Informal Motion.  The Court, having reviewed the underlying arguments previously provided by the parties, as well as the District Judge's July 12, 2006 Memorandum and Order for Remand, and having decided this matter without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons discussed below, will further clarify Its March 30, 2006 Order.

I.    BACKGROUND

      Plaintiff Rosann Delso (hereinafter "Plaintiff") brought this civil action against Defendant Trustees of the Retirement Plan for the Hourly Employees of Merck & Co., Inc. (hereinafter "Defendant").  In her Complaint, Plaintiff alleges that her husband was an employee of Merck at its Rahway, New Jersey facility for a period in excess of 31 years and a participant in the company Hourly Retirement Plan (hereinafter "the Plan").  (Complaint, ¶ 8).  Pursuant to the

terms of the Plan, an employee who attained sufficient years of service and became disabled while an active employee was entitled to a disability pension. (Id. at ¶ 6). Further, a married employee who was eligible for a disability pension, and who desired to receive his pension in a lump sum could do so if they executed a form waiving "a qualified joint and survivor annuity pension." (Id. at ¶ 7).

On or about December 23, 2002, Plaintiff's husband suffered a heart attack requiring his hospitalization. (Id. at ¶ 10). On December 26, 2002, at 6:14 a.m., Mr. Delso passed away. (Id. at ¶ 8). During the period between December 23, 2002, and December 26, 2002, Plaintiff attempted to deal with the paperwork necessary so that her husband could apply for a disability pension and request a lump sum payment. (Id. at ¶ 11). On December 26, 2002,[1] Mr. Delso affixed his mark on documentation seeking a disability retirement pension. (Id. at ¶ 12). On that same day, subsequent to Mr. Delso's passing, the application was given to Merck for processing. (Id. at ¶ 13). Although both Plaintiff and her husband intended that the disability benefits be paid in lump sum, and although Plaintiff has since applied for lump sum payment, the Trustees of the Benefit Retirement Plan (hereinafter "the Committee") have rejected Plaintiff's claim to lump sum equivalence. (Id. at ¶¶ 14, 15).

Defendant asserts that the Committee, which is comprised of management and union employees, maintains the powers of the supervision and administration of the Plan, including all questions affecting the eligibility of any employee to participate in the plan, any authorizations

---

[1] Several conflicting statements have been provided by the parties regarding the date Mr. Delso affixed his mark. The Complaint, as stated, lists December 26 as the applicable date. However, Plaintiff's affidavit in opposition to Defendant's summary judgment motion lists the date as December 25. Defendant lists the date as December 24. However, for purposes of the instant motion, the actual dated Mr. Delso affixed his mark is irrelevant.

for disbursement of funds, and any factual determinations necessary to make benefit eligibility determinations. (Defendant Opposition to Appeal, p. 3). Defendant further asserts that for any participant of the plan to be eligible to receive disability retirement benefits, a retirement application must be submitted prior to a participant's death. (Id. at p. 4). Further, to receive a lump sum benefit, the Plan requires that a married participant who wished to receive benefits in any other form other than a Qualified Joint and Survivor Annuity must provide spousal consent. (Id. at p. 5).

Defendant further asserts that on December 26, 2002, at 4:25 p.m., Mr. Delso's union representative, who was also a member of the Committee at the time, delivered a note to the manager of human resources, which purportedly was the note executed on December 24, 2002 requesting to go on disability retirement immediately and that the disability pension be paid in lump sum. (Defendant Opposition to Appeal, p. 6). The manager of human resources thereafter forwarded the note to the Secretary for the Committee and requested its review to determine whether it could be retroactively applied to place Plaintiff's husband on disability retirement prior to his death. (Id.).

The note was submitted to the Committee members for consideration as to whether Plaintiff was eligible for lump sum disability retirement benefits. The Committee determined that Plaintiff was not entitled to disability retirement benefits because the application was delivered after Mr. Delso's passing. The Committee also considered Plaintiff's request to receive her husbands benefit in the form of a lump sum, but determined that Plaintiff was not eligible because there was no spousal consent form submitted. (Id.).

Both parties agree that Mr. Delso was a member of the Plan as he had the requisite number of years of employment at Merck necessary for eligibility. The parties further agree that the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1001, et seq. is the applicable statutory body of law regarding the issues at bar. (Complaint, ¶ 1; Defendant Opposition to Appeal, p. 1).

**II.  PROCEDURAL HISTORY**

On June 28, 2004, Plaintiff filed the instant action. Prior to the initial conference, this Court conducted a telephonic conference in which Defendant expressed its intent to seek to have Plaintiff's counsel disqualified due to a perceived conflict of interest. The Court granted both parties time to determine whether a conflict existed. On February 15, 2005, the Court conducted a follow-up conference call in which Plaintiff's attorney indicated that there was indeed a conflict of interest. The Court provided additional time to Plaintiff to obtain new counsel with a deadline of March 15, 2005. The Court advised Plaintiff that if she was unable to obtain new counsel by said deadline that she would then be deemed to be a *pro se* litigant. Plaintiff did not obtain new counsel.

Thereafter, Defendant filed a Motion for Summary Judgment. On November 3, 2005, the Court conducted another conference call in which Plaintiff expressed a need for additional discovery in order to properly respond to Defendant's Motion. Defendant agreed to withdraw the Motion until the discovery issues were resolved. It was during this conference call that Plaintiff first revealed that she was going to request meeting minutes for Committee meetings previously held.

On January 30, 2006, a conference call was again conducted. Plaintiff sought 7 to 10 days with which to review the discovery documentation she had received from Defendant and to try to convince Defendant to turn over additional information not previously produced. On February 10, 2006, Plaintiff contacted this Court requesting an additional week with which to advise Defendant of discovery concerns, which was granted.

Conversations regarding discovery between the parties failed and on March 14, 2006, Plaintiff forwarded to this Court an informal motion seeking that this Court compel Defendant to provide the following: (1) the minutes of Hourly Pension Committee meetings from January 1, 1984 through October 30, 2005; (2) the minutes of the Exempt or Salary Pension Committee meetings from January 1, 1984 through October 30, 2005; (3) emails, correspondence, communications or other documents relating to the consideration and decision of the Hourly Pension Committee on Mr. and Mrs. Delso's original claim for disability retirement and/or to show spousal consent, including any notes or records of any telephone calls or other oral communications relating to the claim; (4) emails, correspondence, communications or other documents relating to the consideration of and decision on Mr. and Mrs. Delso's claim for disability retirement and/or to show spousal consent, including any notes or records of any telephone calls or other oral communications relating to the claim; (5) all documents, communications or correspondence submitted by any Plan participant to the Hourly Pension Committee or to the Non-Exempt or Salary Pension Committee that related to a request or effort by the participant to obtain disability retirement and/or to show spousal consent even though the participant had not complied with Plan requirements or qualifications; (6) any documents reflecting the consideration of and decision on any effort to seek the exception or exemptions set

forth in # 5; (7) all documents, communications or correspondence submitted by any Plan participant to the Hourly Pension Committee or to the Non-Exempt or Salary Pension Committee that relate to a request or effort by the participant to obtain benefits even though the participant had not complied with a Plan requirement or qualification other than those referred to in # 5; (8) any documents reflecting the consideration of and decision on any such request for an exception or exemption set forth in # 7; and (9) all documents, communications or correspondence related to Willis Kelley's or Willis Kelly's request for disability retirement benefits and/or spousal consent and all documents reflecting the decision on this request.  In Plaintiff's moving papers, she argued that the information sought was relevant to show Defendant's inconsistent application of the applicable provisions of the disability plan, factually necessary to support Plaintiff's claims of inconsistency and bias with regards to the Committee's application of the disability plans' provisions, and necessary to determine what standard of review should be applied and whether that standard should be heightened.

      This Court considered Plaintiff's arguments and Defendant's disconfirming reply and determined that the unmodified arbitrary and capricious standard of review was the applicable standard to the case at bar.  This Court further held that in order to apply the heightened arbitrary and capricious standard, tangible evidence that the structural relationship had tainted the review process was required to be provided.  This Court ultimately found that the affidavit of a former member of the Committee failed to rise to the level of tangible evidence necessary to require the application of the heightened standard and that permitting Plaintiff to extend discovery beyond its usual ERISA perimeters was not justified.  As such, this Court denied Plaintiff's requests in their entirety.

Plaintiff appealed to the Honorable Anne E. Thompson, United States District Judge. Defendant filed opposition and on March 29, 2006, the District Court issued a 4 page Opinion remanding the issue to this Court for further consideration. In the Opinion, the District Court indicated that It was unsure as to whether this Court considered and discarded the potential application of a heightened arbitrary and capricious standard or whether this Court found that Plaintiff had not made a showing that Defendant's exercise of discretion had been tainted sufficiently to warrant the application of de novo review, leaving open whether a heightened arbitrary and capricious standard should apply. Further, the District Court indicated that It was unclear as to whether this Court, in deciding upon the applicable standard of review, took into account the potential for consideration of evidence outside of the administrative record showing a pattern of inconsistent benefits decisions. Based on the aforementioned, the District Court remanded to this Court the issues for further consideration and explanation.

**III.   DISCUSSION**

    **A.   What is the Standard of Review to be Applied to the Underlying Motion?**

The District Court first seeks clarification of which standard of review this Court applied to Plaintiff's underlying discovery request. Although ERISA does not set out the standard of review for actions brought by a spouse of an employee that has been denied benefits, the United States Supreme Court in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 108-11 (1989) has found that when a benefits plan affords the administrator discretionary authority to construe the plan or determine eligibility for benefits, the administrator's interpretation of the plan will be reviewed under an arbitrary and capricious standard.[2] This standard of review applies whether

---

    [2] Conversely, if the administrator does not possess discretionary authority regarding eligibility for benefits, then the administrator's interpretation of a plan is to be reviewed under a

the plan administrator's determination was based on the interpretation of the plan or factual determinations as applied under the plan. Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997).

A modified arbitrary and capricious standard is proper, however, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest." Firestone at 115. When reviewing an ERISA plan fiduciary's discretionary determination regarding benefits, a court must apply a "heightened" arbitrary and capricious standard of review. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 378 (3d Cir. 2000). This heightened standard of review uses a "sliding scale approach" for determining what modifications, if any, a court must make to the level of scrutiny applied to a plan administrator's decision so that "the degree of scrutiny [intensifies] to match the degree of conflict." Id. at 392.

The Third Circuit has identified three circumstances that can trigger a heightened arbitrary and capricious standard of review. First, the plan administrator may be operating under a structural conflict of interest. Id. at 383. Pursuant to Pinto, only one of the three ways in which companies typically structure the relationship between the ERISA plan administration, interpretation and funding presents a conflict of interest. In explaining the three typical structures, the Court stated: "[F]irst, the employer may fund a plan and pay an independent third party to interpret the plan and make plan benefits determinations. Second, the employer may establish a plan, ensure its liquidity, and create an internal benefits committee vested with the discretion to interpret the plan's terms and administer benefits. Third, the employer may pay an

---

de novo standard. Firestone at 115. As the Committee in this instance possesses discretionary authority regarding benefits (see Article XII, subsection (c) of the Plan), the de novo standard of review is wholly inapplicable.

-8-

independent insurance company to fund, interpret and administer the plan." Id.  The Third Circuit further stated that the " . . . first two arrangements do not, in themselves, typically constitute the kind of conflict of interest mentioned in Firestone."  Id.  Therefore, in situations like the one presented in the case at bar, where an employer establishes an ERISA plan, ensures its liquidity, and creates an internal benefits committee vested with the discretion to interpret the plan's term, those situations do not generally present a conflict of interest.

Further, the heightened arbitrary and capricious standard of review may be appropriate if the plaintiff shows "demonstrated procedural irregularities, bias or unfairness in the review [by the plan administrator] of the claimant's application for benefits." Kosiba v. Merck & Co., 384 F.3d 58, 66 (3d Cir. 2004).  This can occur from either the plan's administrator's "self-serving" use of one doctor's expertise, inconsistent treatment of the same facts and when at a "crossroads" the plan administrator disfavors the claimant. Pinto at 393-94.  However, the claimant bears the burden of proving procedural bias or bad faith by presenting the court with specific evidence of bias. Bill Gray Enters, Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 216 (3d Cir. 2001) ("Unless specific evidence of bias or bad-faith has been submitted, plans . . . are reviewed under the traditional arbitrary and capricious standard").

Here, the Plan vests discretion in the plan administrator to make both factual determinations and to interpret the terms of the Plan.  Therefore, an arbitrary and capricious standard is warranted under the holdings of Firestone and Mitchell.  The question then becomes whether a heightened arbitrary and capricious standard is to be necessarily applied.  This Court now unequivocally states that It finds no conflict of interest in the administration, interpretation and funding of the Plan to warrant the application of a heightened arbitrary and capricious

standard.  Rather, the structure of the Plan falls squarely into the second category outlined by the Third Circuit in Pinto as the Plan is an employer-funded plan with a committee vested with the discretion to interpret the terms of the plan, make findings of fact and determine eligibility for benefits payable.  Pinto at 383.

Further, this Court finds that Plaintiff has failed to carry her burden of proof in presenting tangible evidence of any procedural irregularities or bias.  Specifically, in Goldstein v. Johnson & Johnson, 251 F.3d 433, 435-36 (3d Cir. 2001), the Third Circuit held that where there is no structural conflict of interest, the traditional arbitrary and capricious standard of review should be applied unless the Plaintiff can point to "specific facts calling the impartiality of the [Trustees] into question."  See also Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 216 (3d Cir. 2001) (if there are no structural conflict of interest, the "traditional" arbitrary and capricious standard is appropriate "unless specific evidence of bias or bad-faith has been submitted . . .").  As previously indicated, Plaintiff bears the burden of proving that a heightened scrutiny should be applied.

In Plaintiff's underlying motion, the sole basis for support of bias and/or bad-faith on behalf of the Committee is an affidavit of Mr. Guy Fleming, a purported member of the Committee from 1987 through 2004.  In the affidavit, Mr. Fleming states that during his tenure he was aware of "at least one instance (and there are probably others that I can recall after I have the opportunity to review the minutes of the meetings) when the Hourly Committee exercised its discretion to award benefits under similar circumstances."  (Affidavit of Mr. Guy Fleming, ¶ 18).

This Court finds that the affidavit of Mr. Fleming is insufficient to meet the burden of proof required to invoke a heightened level of scrutiny.  First, the Committee is composed of

union members (representatives of the employees) and management (representatives of the company) which at least negates if not completely cancels out any possible bias or bad-faith on the Committee's part. This is shown by the 6 to 4 vote against granting benefits by the Committee on two separate occasions. Further, the members of the Committee that are management have no financial incentive to deny benefits. The Plan is established as an ERISA trust fund whose contributions, originating from the company, are not affected by said funds distributions. Put another way, there is no evidence presented that shows that the company's financial backing of the Plan is negatively affected by the granting of benefits. As the Committee's composition provides neutral review, and as the company has no tangible interest in denying benefits, a heightened level of scrutiny is inapplicable here. See Vitale v. Latrobe Area Hosp., 420 F.3d 278, 282-83 (3d Cir. 2005) (holding that it was inappropriate to apply a heightened arbitrary and capricious standard of review to decisions made by a plan administrator where an employer (1) established an ERISA trust fund and (2) funded the plan where contributions were not directly influenced by individual benefits decisions).

The speculation of Mr. Fleming that previous decisions by the Committee may have permitted benefits to those who failed to meet the Plan's administrative requirements and his recollection that in one instance such a circumstance existed does not constitute the specific tangible evidence of a conflict as required by Gourley.

      **B.**    **Can the Court Consider Evidence Outside the Administrative Record?**

The District Court next seeks clarification as to whether this Court, in deciding upon the applicable standard of review, "took into account the potential for consideration of evidence outside of the administrative record showing a pattern of inconsistent benefits decisions." The

-11-

District Court thereafter cites to two cases, <u>Otto v. Western Pennsylvania Teamsters and Employers Pension Fund</u>, 127 Fed.Appx. 17, 21, n.5 (3d Cir. 2005)[3] and <u>O'Malley v. Sun Life Assurance Co. of Am.</u>, 2006 WL 182099 at *7 (D.N.J. Jan. 23, 2006).

Generally, the scope of discovery in an ERISA case depends upon the standard of review. In the Third Circuit, "a district court exercising de novo review over an ERISA determination between claimants is not limited to the evidence before the Fund's Administrator." <u>Luby v. Teamsters Health, Welfare & Pension Trust</u>, 944 F.2d 1176, 1180 (3d Cir. 1991). In decidedly sharp contrast, the record available to a court conducting an arbitrary and capricious review is the record made before the plan administrator, which cannot be supplemented during litigation. <u>Kosiba v. Merck & Co.</u>, 384 F.3d 58, 67 n.5 (3d Cir. 2004) (*citing* <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 440 (3d Cir. 1997).[4]

Concurrently, as this Court finds that an unmodified arbitrary and capricious standard of review is to be applied to Plaintiff's underlying motion, additional discovery that branches beyond the "evidence that was before the administrator when he made the decision being reviewed" is not permitted. <u>See</u> <u>Luby</u> at 1184; <u>see also</u> <u>Johnson v. UMWA Health and Retirement Funds</u>, 125 Fed.Appx. 400, 405 (3d Cir. 2005) ("[t]his Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the plan administrator which cannot be supplemented during litigation").

---

[3] Based on this Court's review, It appears that the District Court intended to cite to n.7 of the <u>Otto</u> opinion as n.5 is simply a reference to the underlying Plan's provision relevant to that case.

[4] Note however that when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record, as this Court has done in the first section of Its analysis. <u>Kosiba</u> at 67.

This Court recognizes footnote 7 of Otto, in which the Third Circuit states that although judicial review of benefit decisions ordinarily should be based on the record available to the plan administrator in making its own decision, "this [nevertheless] does not establish a categorical rule of inadmissibility in ERISA cases.  Evidence beyond the administrative record may in certain circumstances be relevant and admissible as to issues that were not before the plan administrator - such as trustee conflict of interest, bias, or a pattern of inconsistent benefits decision."  However, this Court notes that the footnote is dicta in an unpublished opinion, which renders it nonbinding, unlike the holdings in Luby, Koshiba and Mitchell.  See Lite, N.J. Federal Practice Rules, Section 5.7, Court of Appeals IOP, p. 984 (2006) ("The court by tradition does not cite to its not precedential opinions as authority.  Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing").  Indeed, if it were binding, Luby, Koshiba and Mitchell would be overturned as to that particular issue of law.  Additionally, O'Malley, a District Court case, remains merely a precedential, not binding, determination and cannot circumvent the holdings in Luby, Koshiba and Mitchell.

This Court is therefore bound to the long standing holdings of the Third Circuit that prevent a review of discovery outside the scope of what was before the administrator at the time of its decision regarding Plaintiff's benefits eligibility.

### IV. CONCLUSION

Based on the foregoing, Plaintiff's Informal Motion for Discovery shall be DENIED.

                                        s/Tonianne J. Bongiovanni
                                        **HONORABLE TONIANNE J. BONGIOVANNI**
                                        **UNITED STATES MAGISTRATE JUDGE**

Dated: August 18, 2006